SUMMARY PROCESS FOR POSSESSION OF PERSONAL PROPERTY.

FRANCIS H. WELMAN, Pl'ff. in Error, *vs.* HARRIS & REILLY, Def'ts.

*Certiorari.*

1. The Act of 1821, "to quiet the possession of personal property," is to be construed strictly.

2. Property, voluntarily delivered to another person, cannot be recovered back from him, by the process, provided for in this Act.

In obedience to the writ of Certiorari, issued in the above cause, the Magistrate, in the Court below, to whom it was directed, makes the following return of his proceedings therein :—That, on the 1st July, 1842, Philip Reilly, one of the firm of Harris & Reilly, of the City of Savannah, made, before him, the following affidavit, under which he prayed a warrant, against the said Francis H. Welman, as also for the seizure of certain seven bales of cotton, which was granted him, upon said affidavit.—That said affidavit and warrant are in the following words :

STATE OF GEORGIA—Chatham County.   Before me, Robert Raiford, a Justice of the Peace for said County, personally appeared, Philip Reilly, of the firm of Harris & Reilly, of the City of Savannah, who, being duly sworn, deposeth and saith, that certain personal chattels, to wit : Five round bales of Upland Cotton, marked " H. H." one round bale of Upland Cotton, marked " J. R." and one other bale of Upland Cotton, marked "T. Wicker," have been recently in the quiet and peaceably acquired possession of the said Harris & Reilly, have disappeared, and without their consent, and as deponent believes, have been taken possession of, and detained, by one Francis H. Welman, under some pretended claim, and without lawful warrant or authority.   And that said Harris & Reilly, bona fide, claim an interest in the said seven bales of cotton.—Wherefore they pray that a warrant may issue, as well for the apprehenson of the said Francis H. Welman, as for the seizure

[Welman *vs.* Harris & Reilly.]

of the said seven bales of cotton, and such further relief as the Law directs.

Sworn to before me, this 1st July, 1842. }
    R. RAIFORD, J. P.           } PHILIP REILLY.

STATE OF GEORGIA—Chatham County.    To any lawful constable of said County:—Whereas, it is set forth, in the foregoing affidavit, that certain seven round bales of Upland Cotton have been recently in the quiet and peaceably acquired possession of Harris & Reilly, have disappeared without their consent, and have been taken possession of, and detained, by one Francis H. Welman, under some pretended claim, and without lawful warrant or authority; These are therefore to command you, *to apprehend* the said Francis H. Welman, if the said seven bales of cotton are to be found in his possession, and bring him, with the said cotton, before me, or some other Magistrate of said County, that proceedings may be had, in this matter, as the Law directs, in such cases made and provided.

Given under my hand and seal, this 1st day of July, 1842.

R. RAIFORD, J. P.   [L. S.]

Under this affidavit and warrant, the said Francis H. Welman *was arrested*, and brought before said Magistrate, 5th July, 1842—who proceeded to hear testimony, in reference to said complaint.

The testimony, as returned by the Magistrate, is as follows:—Walter Harris, the Clerk of Harris & Reilly, being sworn, states, that he is the Clerk of Messrs. Harris & Reilly; that he knows Harris & Reilly have seven bales of Upland Cotton, *which were stored with Mr. Welman.* One bale, marked I. Wicker, re-entered 21st May last. Five bales, H. H. and one bale, J. R. *were stored,* 25th May last, at the store of Welman & Waugh. Has seen notice in the newspapers, of the dissolution of the co-partnership of Welman & Waugh, but does not know of such dissolution, of his own knowledge. Carried order of Harris & Reilly, on Mr. Welman, 27th June last, and demanded the seven bales of cotton. Demanded a bill of storage, and this cotton. Both were refused. As well as witness recollects, he, Mr. Welman, would not deliver the cotton, nor make out the bill. Harris & Reilly had a claim on the cotton. They were *in the habit of storing cotton there.* The store, (where the cotton was stored) was on the top of the bluff, in the City of Savannah,

[Welman *vs.* Harris & Reilly.]

and remote from any wharf. Mr. Welman, as well as witness recollects, refused to deliver the cotton, until a former bill (of Harris & Reilly) for storage, was paid. The cotton, for which this old bill had accumulated, had been delivered some time, and had been taken away; the last of which was on the 21st May last. The one bale, re-entered 21st May, was of a lot of about one hundred bales. That bale was rejected, as false packed, or for some other cause, by the purchaser. The bill of storage, up to the 21st May, was rendered. The other six bales formerly belonged to W. Wray; but now, the whole seven are the property of Harris & Reilly. The bill of the re-entry of the one bale was rendered. *The cotton was ordered to Mr. Welman's store, by witness.* Harris & Reilly do a commission business, so far as the selling of cotton. *The cotton was placed in the store of Mr. Welman, by the consent of Harris & Reilly.* The cotton was usually turned in and out, by Mr. Welman. Harris & Reilly did offer to settle their bill. Witness tendered, in specie, for the storage of the seven bales. Mr. Reilly offered to settle with Mr. Welman, if he would settle Welman & Waugh's acceptance, in favor of Harris & Reilly. Witness told Mr. Welman, that Harris & Reilly would settle the old bill. The acceptance was not due, on the 21st May. As far as witness recollects, the acceptance was in the way of a settlement, and fell due 25th June, and was not paid. The demand, made by Harris & Reilly, of the 27th June, was because they wished to remove the cotton.

Joseph Cumming, Esq. (called by the Court to state what was the usage among merchants, in such cases,) stated, that there is no doubt, that all property is liable, for its own storage. Is well acquainted with the history of the case before the Court. Knows of no case, like the present one. In general, when an article is turned out of store, it is considered a delivery. If I turn out one hundred bales of cotton, and one is returned, by the act of the first party; I think it is liable for the storage of the whole. Has often known cotton detained, to pay a former bill of storage.

This was all the testimony, before the Court, upon the trial of this writ of possession; and upon this testimony, the Magistrate, in the Court below, ordered and directed, that the said seven bales of cotton be forthwith delivered to the complainant, and that the defendant be discharged, on the payment of costs.

[*Welman vs. Harris & Reilly.*]

To this judgment of the Court below, the defendants' attorney took the following exceptions, in writing, which were overruled, by the said Court; and having complied with the Statute, applied to this Court, for the present writ of Certiorari, which was granted him.

1. That said decision is contrary to Law: because the evidence disclosed the fact, that the cotton had been placed in the possession of the said Francis H. Welman, *by the plaintiffs;* and therefore, that he was the last, in the quiet and peaceably and legally acquired possession thereof.

2. That said decision is contrary to Law, because the said Francis H. Welman had a lien on the same, for storage.

3. Because the said decision is contrary to Law and evidence.

This case brings up for consideration, and construction, the provisions of the Act of the 25th December, 1821, "An Act, the more effectually to quiet and protect the possession of personal property, and to prevent taking possession of the same by fraud or violence."— *Prince D*. 449–50.

The first section of this Act declares, "That upon complaint, made "on oath, by the person injured, his agent or attorney, to any Judge "of the Superior, or Justice of the Inferior Courts, or any Justice of "the Peace, that any negro, or negroes, or other personal chattels, "have been taken, enticed, or carried away, by fraud, violence, se- "duction, or other means, from the possession of such deponent; or "that such negroes, or other personal chattels, having *been recently* "*in the quiet and legally and peaceably acquired possession of such* "*deponent,* have absconded, or disappeared, without his or her consent, "and, as he or she believes, have been harbored, received, or taken "possession of, by any person or persons, under some pretended "claim, or claims, and *without lawful warrant or authority;* and that "the said deponent, or the person for whom he is agent or attorney, "bona fide, claims a title to, or interest in, said negroes or other "chattels, or the possession thereof; that it shall be the duty of such "Judge, or Justice, to issue a warrant, as well for the apprehension "of the party so seizing, taking, enticing, receiving, harboring, ob-

[Welman *vs.* Harris & Reilly.]

" taining, or having possesion of, such negroes, or other chattels,
" as for the seizure of such negroes, or other chattels, them-
" selves—*and upon the return of such warrant, the Judge or Jus-*
" *tice shall hear evidence, as to the question of possession, in a*
" *summary way, and cause the said negroes, or other chattels, to be*
" *delivered over to the party,* from whose possession the same were
" violently or fraudulently taken, or enticed away, or from whom the
" same absconded, *or in whose peaceable possession they last were;*
" Provided such party shall, before such Judge or Justice, enter into a
" recognizance, with good and sufficient security, in double the
" amount of the value of such negroes, or other personal property,
" and the hire claimed, if any, to cause the said negroes to be pro-
" duced and forthcoming, to answer any judgment, execution, or de-
" cree, that may be had, issued, or made, upon such suit, or action,
" at Law, or in Equity, as the opposite party may commence, or pro-
" secute, within the next four years, touching the same; and such
" recognizance shall be returned, by such Judge or Justice, to the
" next Superior Court of the County, where the same is taken, to be
" transmitted to the Court where such suit or action may be com-
" menced, and the securities upon such recognizance shall be bound
" and liable, for the eventual condemnation money, and execution
" shall issue, against them, in such manner, as against securities on
" appeals."

This Statute, being one manifestly made in contravention of com-
mon Law principles and proceedings, must be construed strictly :
and especially so, as the proceeding, under it, to a certain extent, par-
takes of a criminal nature. The party injured, therefore, must not
only bring himself strictly within some one of the cases, mentioned
in the statute, but he must also support his complaint, at the hearing,
by competent and sufficient testimony, or the Judge, or Justice, be-
fore whom the complaint is made, has no jurisdiction, under the
Statute, over the subject matter in dispute. There are but two class-
es of cases, embraced within the act; the first is, where a person,
bona fide claiming a title to, or interest in, a negro, or negroes, or
other personal chattel, or the possession thereof, declares, under his
oath, that such negro or negroes, or other personal chattel, have been
taken, enticed, or carried away, by fraud, violence, seduction, or
some other means, (of like character,) from his possession. The

second is, where a person, bona fide, claiming title to, or interest in, a negro or negroes, or other personal chattel, or the possession thereof, declares, under his oath, that such negroes, or other personal chattels, having been recently in his *quiet* and *legally* and *peaceably* acquired possession, have absconded, or disappeared, *without his or her consent,* and, as he or she believes, have been harbored, received, or taken possession of, by the person, against whom the warrant is prayed, *under some pretended claim or claims, and without lawful warrant or authority.* By a reference to the affidavit, which has been made in the present case, and the warrant issued thereon, it appears, that it is under this last class of cases, as contained in the Statute, that this complaint has been made. The facts, so far as they are stated, on the face of the affidavit of Mr. Reilly, the prosecutor, may be considered as sufficiently strong, under the Statute, for the purpose of authorizing the Magistrate in the Court below, to have issued his warrant, and entertained jurisdiction of the case, in the first instance. *But the Magistrate, on the return of the warrant, is required, by the Statute, to hear evidence, in a summary way, as to the question of possession, solely.* Beyond that single question, he has no jurisdiction, under the Statute ; and any other evidence, not pertinent to that issue, exclusively, he has no right to receive. On the hearing, the complainant is bound to support the facts, contained in his affidavit, by competent and sufficient testimony ; and if he fails so to do, it is the duty of the Magistrate to dismiss the proceeding, for want of jurisdiction, and leave him, for redress, to the ordinary proceedings at Law. Now, the facts, as set forth on the face of the affidavit of the complainant, Philip Reilly, are, that certain personal chattels, to wit, five round bales of Upland Cotton, (identified by certain marks,) had been recently in the quiet and peaceably acquired possession of the firm of Harris & Reilly—*that they have disappeared, without their consent, and, as deponent believes, have been taken possession of, and detained, by one Francis H. Welman, under some pretended claim, and without lawful warrant or authority* : Where, I would ask, is the testimony, which was received by the Magistrate, in the Court below, on the hearing of this writ, which sustains any one of the facts, as sworn to by the complainant ? If such testimony was taken, it is not to be found, in that, which has been returned to this Court, in obedience to the present writ. On the contrary, I find the facts, as contained in that testimony, not only in positive contra-

[Welman *vs.* Harris & Reilly.]

diction to the facts, as set forth on the face of the complainants' affidavit, but, so far as the question, of the last peaceable and legally acquired possession, is involved in the present proceeding, conclusively showing, that *not* the complainants, but the defendant, Francis H. Welman, *was in such possession, with their consent, and at their instance;* or, in other words, that the cotton in dispute had been sent to the said Welman, by the complainants, for storage, with their approbation and consent; *and consequently, could not have disappeared from their possession, without their consent.* In the teeth of these facts, the Magistrate, in the Court below, *not only sustains jurisdiction of this complaint, under the Statute, but proceeds to give judgment, that the defendant shall forthwith deliver up said cotton, to the complainants, and be discharged, upon the payment of costs;* when he is expressly required, by the Statute, after hearing the evidence, as to the question of possession, in a summary way, *to cause the said chattels to be delivered over to the party, in whose peaceable possession it shall appear they last were.* The facts, therefore, as they were in evidence, before the Magistrate, in the Court below, and as they have been returned to this Court, according to the testimony of the complainants' own witnesses, make out a case, which is clearly neither within the letter, nor spirit, of the Act of 25th December, 1821. For, if personal property come into the possession *of another, lawfully and by and with the consent of the true owner;* although a subsequent detention of the same, under some pretended claim, may not possibly be justified, upon legal principles, in a Court of Law; still, such detention does not render such party answerable, under the provisions as contained in the Act of 25th December, 1821. It is a case, not contemplated by the Statute, and, in my opinion, embraced, neither within its spirit, or language. The cases, and the only cases, embraced within the Statute, are where the *original taking* of the chattel, from the possession of the true owner, has been by fraud, violence, seduction, or some other means (of like character); or where the chattel, having been in the quiet and legally and peaceably acquired possession of the complainant, has absconded, or disappeared, without his consent, and has been taken possession of, or received, by the person, against whom the warrant is asked, under some pretended claim, or claims, and without lawful warrant or authority. If these facts are *not* clearly and satisfactorily made to appear, by the complainant, at the hearing, by competent and credi-

I

[Welman *vs.* Harris & Reilly.]

ble testimony; the Magistrate can have no jurisdiction, over the subject matter of complaint, under the Statute, above referred to. In such case, he should dismiss his proceeding, for want of jurisdiction, and leave the parties to contest their rights, according to the usual and ordinary proceedings, in Courts of Law.    Being clearly of opinion, therefore, for the reasons now given, that the Magistrate, in the Court below, under the facts, as they were testified to, before him, in the present case, had no jurisdiction over the subject matter in dispute, by virtue of the provisions, as contained in the Act of 25th December, 1821; I must dismiss these proceedings, in the Court below, with costs.

It is therefore ordered, that all the proceedings in the Court below, in the case of Harris & Reilly *vs.* Francis H. Welman, under the Act of 25th December, 1821, be, and the same are, hereby dismissed, with costs.    And it is further ordered, that the judgment of this Court, in the premises, be certified to Robert Raiford, Esq. the Justice, before whom said writ of possession was tried, by the Clerk of this Court, forthwith.

CHARLTON & WARD, for Plaintiff in Error.
MILLEN & KOLLOCK, for Defendant in Error.